**TROHA, Plaintiff-Appellee, v. SNELLER, Admrx., etc., Defendant-Appellant.**
**TROHA, Deceased, Estate of, In re.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 24556, 24557.   Decided July 10, 1958.

Beach & Warner, for appellee.
Ellis V. Rippner, for appellant.

## OPINION

By SKEEL, PJ.

These appeals and appellee's cross appeal come to this court from judgments entered in two separate actions tried at the same time. The first to be considered deals with the appellee's motion seeking to remove Angela Sneller as administratrix of the Estate of Philip Troha, deceased. The second action, filed by the appellee, as the surviving spouse of Philip Troha, seeks a declaratory judgment as to her right to share in the estate of her deceased husband under the terms of a "prenuptial agreement" entered into between the appellee and her husband before their marriage. The court granted appellee's motion removing Angela Sneller as administratrix and by separate decree, interpreted the "prenuptial agreement" to be valid but found that its terms did not exclude the surviving spouse from the right to the statutory exemption of assets not subject to administration as fixed by the appraisers and to a year's allowance, as defined by statute, and as returned by the appraisers, and the right. as provided by statute, to occupy the mansion house for a period of one year or its equivalent in money.

From the foregoing judgments, the appellant claims the following errors:

"1. The Probate Court erred as a matter of law in removing Angela Sneller as Administratrix of the Estate of Philip Troha.

"2. The Probate Court erred as a matter of law in setting off to Pauline Yerkic Troha, twenty per cent (20%), or the statutory exemption from the Estate of Philip Troha.

"3. The Probate Court erred as a matter of law in setting off to Pauline Yerkic Troha from the Estate of Philip Troha, a year's allowance.

"4. The Probate Court erred as a matter of law in giving Pauline Yerkic Troha, from the Estate of Philip Troha, the right of occupancy of the mansion house for one year, or the money equivalent thereof.

"5. For reason of other errors apparent on the face of the record."

Philip Troha and Pauline Yerkic (now Pauline Troha), just prior to their marriage on August 3, 1946, to wit, as of July 29, 1946, and in contemplation of marriage, entered into a "prenuptial agreement." It is therein declared that each of the parties, having been previously married, and each having children by such prior marriages, and each then being possessed and seized of property, real and personal, "agree as to their property, as follows:"

The agreement then, in part, provides:

"Now, therefore, in consideration of said marriage and of the covenants of the said First Party and Second Party hereinafter contained, the said First Party hereby covenants and agrees to relinquish all right, title, interest, or claims of dower, in and to the real property of said Second Party now owned or hereafter acquired and in lieu of any and all rights or claims to a distributive share of said Second Party now owned or hereafter acquired, and in lieu of any and all rights or claims in or to the estate of the said Second Party which may arise by virtue of said marriage.

"And the said Second Party, in consideration of said marriage and of the covenants of said First Party hereinafter contained, covenants and agrees to relinquish all rights or claims of dower in and to the real property of said First Party now owned or hereafter acquired, and in lieu of any and all right, title, interest, or claims to a distributive share of Frist Party's personal property now owned or hereafter acquired, and in lieu of any and all rights or claims in or to the estate of the said First Party which may arise or accrue by virtue of said marriage, and both parties mutually agree that at no time will they claim any right, title or interest in the real or personal property now owned by them previous to their marriage, and in the event either party to this agreement should sell any of their real property and acquire other real property, each party to this agreement waives all their right, title and interest in and to the same, and that at the death of either party to this agreement said real property shall go to the children of the respective parties to this agreement.

"It is further agreed that each party to this agreement shall pay their own taxes, insurance and upkeep of their own premises.

"It is further agreed by and between the parties to this agreement that in the event either one of the parties desires to sell their property that the other party will join in a Warranty Deed or such other instru-

ment of conveyance as may be necessary to release all the right, title and interests that he or she may have in the property of the person selling the same.

"It is further agreed by and between the parties that each party shall collect their own rentals to their respective properties.

"It is further agreed by and between the parties to this agreement that in the event there should be a dissolution of this marriage, either by law or by death, that then the respective parties to this agreement agree to give instruments of conveyance releasing any and all of their right, title and interest in each other's property.

"This agreement is made for the benefit of the heirs, executors, administrators and assigns of the parties to this agreement and shall be binding upon them."

Each of the parties had four children by his previous marriage. In 1953, Pauline Troha sold her single family house for ten thousand dollars. She gave two thousand dollars out of the proceeds of the sale to each of her four children. In disposing of the property, Philip Troha released dower as required by the "prenuptial agreement."

Philip and Pauline Troha planned a European trip to begin July 1, 1957. On June 21, 1957, Philip Troha withdrew $2058.78 from his savings account in The National City Bank of Cleveland to be used in part to defray the expenses of the trip. The account was held in the names of Philip Troha, Sr., and Philip Troha, Jr., with an agreement with the Bank that either could draw, with balance payable to the survivor.

Mr. and Mrs. Troha started for Paris on July 1, 1957 by air. Philip Troha died in flight before reaching the continent. In Paris arrangements were made to return his body to Cleveland. His children were notified of his death by cablegram on July 2, 1957. It is not clear from the record as to who made the arrangements for the return of the body to Cleveland. The expenses, however, appear to have been paid by the Cleveland undertaker who also conducted the funeral. The total bill for the undertaker's services, as shown by the probate records, was $2169.98 from which fact it could be reasonably deduced that the children of the decedent made the necessary arrangements for the return of their father's body to Cleveland for burial.

In all events, Pauline Troha, without further interruption, continued on her European tour, undoubtedly, in part financed by the money in possession of her husband at the time of his death. She did not return to the United States until October 12, 1957. What occurred in Paris, including the disposition of the personal effects of the deceased, is not shown by the record. These matters could have been fully explained by the widow but she did not testify in either of the two cases. There is likewise no evidence that she disclosed her whereabouts to the children after leaving Paris nor tell them when she expected to return. It was also perfectly evident by her conduct that she did not intend to return to Cleveland with the body of her deceased husband or participate in the funeral services. The body was returned to Cleveland on July 18, 1957 and the burial took place on July 20, twenty days after the date of his death.

On July 17, 1957, Angela Sneller, a daughter of the deceased by his

first marriage, made application for letters of administration of her father's estate. The application was made out in the clerk's office of the Probate Court and verified by a deputy clerk. The record shows that Angela Sneller was guided through the procedural steps of these proceedings by the help of the personnel of the clerk's office of the Probate Court. The application clearly sets out that the surviving spouse was a resident of Cuyahoga County. Residence service was had upon her by the sheriff. This fact indicates a disclosure of the absence of the widow from the jurisdiction and compliance with the law for residence service upon advice given by the deputy clerk of the Probate Court as necessary procedurally before an appointment as administratrix could be legally made. (Neither party employed legal counsel until these actions were commenced.) Angela Sneller was appointed administratrix on the 29th day of July, 1957 and upon giving bond in the sum of $4,000, proceeded to perform the duties of the office. Each subsequent step, as required by probate law, including the appointment of appraisers, the filing of the inventory and appraisement, the application for the determination of inheritance tax and the like, proceeded in good order, and where necessary, all verifications were executed by deputy clerks of the Probate Court.

The inventory and appraisement disclosed that the deceased was the owner of a two-thirds interest in the real property occupied by the Troha's as their family dwelling which interest was appraised as of the value of $8666.00. The personal assets were found to consist of one share of stock in The General Electric Company, valued at $67.00. The appraisers, as required by §§2115.13, 2115.14 and 2115.15 R. C., set aside as exempt from administration, there being a surviving spouse, the sum of $1746.00, and made an allowance of $2,000 for the widow's year's support, the appraisers finding that there was not sufficient personal property of a suitable kind for that support. The report of the appraisers was thereafter approved by the court.

It is hard to conceive of one unfamiliar with probate practice moving forward with each required procedural step, including all notices, either waived or served, as provided by law (where the services of a lawyer had not been employed), except upon the advice of the court personnel to whom great credit is due for their patience and understanding. It could not be expected that they would act without full inquiry of the surrounding circumstances necessary to guide them, which must have included knowledge of the whereabouts of the surviving spouse. The only step omitted, as shown by the record, was the issuance of a citation to the surviving spouse "by the court" where a waiver of her right to the appointment as administratrix of her deceased husband's estate was not filed with the application for such appointment by his daughter as provided by §§2113.06 and 2113.07 R. C. The first two full paragraphs of §2113.06 R. C., designate to whom and in what order appointments for the administration of estates are to be made. Such paragraphs provide:

"Administration of the estate of an intestate shall be granted to persons mentioned in this section, in the following order:

(A) To the surviving spouse of the deceased, if resident of the state;

(B) To one of the next of kin of the deceased, resident of the county:

(C) To one of the next of kin of the deceased, resident of the state;

"If the persons entitled to administer the estate fail to take or renounce such administration voluntarily, they shall be cited by the probate court for that purpose, if resident within the county."

The first two paragraphs of §2113.07 R. C., provide:

"Before being appointed executor or administrator, every person shall make and file an application under oath, which must contain the names of the surviving spouse and all the next of kin of the deceased known to such person, their post-office addresses if known, a statement in general terms as to what the estate consists of and its probable value, and a statement of any indebtedness the deceased had against such person making said application.

"The application may be accompanied by a waiver signed by the persons resident of the county entitled to administer the estate, and in the absence of such waiver such persons shall be cited by the probate court for the purpose of ascertaining whether they desire to take or renounce such administration."

The duty to cite a spouse whose waiver does not accompany an application for appointment as administrator of an estate by one lower in priority is, by both of these sections, placed upon "the Probate Court." Failure to issue such citation cannot be charged to an applicant for letters of administration where all of the facts have been disclosed as was done in this case.

The conclusion that the application for letters of administration of the estate of Philip Troha by Angela Sneller was "precipitous," "lacking in good faith" and accomplished by fraudulent conduct, is not supported by the record. The record fails to show that the widow advised anyone of her whereabouts or her plans to return. In fact, there is not a syllable of evidence in the record that she made any inquiry concerning the burial of her husband. The conclusion could be properly drawn that because of the "prenuptial agreement," she had no interest in the estate and that she considered it was the burden of his children to see to his burial and to take care of settling his affairs. Her lack of concern and indifferent conduct was such that a constructive waiver of her statutory priority to act in administering her husband's estate could reasonably be deduced therefrom. The widow's delay in returning to the United States was also a factor in dealing with the creditors of the deceased. Must one who has expended considerable money in returning the body of a deceased husband from Europe be required to stand by and wait indefinitely until the widow, who was with the deceased when he passed away, continues on her tour with all the assets there at hand and without even a suggestion of her intended time of return? The applicant (Angela Sneller) did not act until it was clearly evident that the surviving spouse did not intend to return with the body of her deceased husband. We also hold, as a matter of law, that in addition to her unreasonable delay in seeking the right to administer her husband's estate and her disinterested conduct as to his affairs, that by the terms of the "'prenuptial agreement," she was without any interest in her husband's estate, and by making an adverse claim against those legally

entitled thereto, she became an unsuitable person to carry out the trust. The judgment granting the widow's motion to remove Angela Sneller as administratrix of the Estate of Philip Troha is reversed as contrary to law and not supported by sufficient evidence and the cause remanded with instructions to overrule such motion.

Coming now to the declaratory judgment construing the "prenuptial agreement," The court held that this agreement was valid and binding upon the parties whereby Pauline Troha is barred from any right of dower or of a distributive share in the property comprising the Estate of Philip Troha but that such agreement did not preclude her, as the surviving spouse, from claiming, and it was decreed that she had the lawful right to: 1) the non-probate assets as defined by statute; 2) the year's allowance as provided by statute; and 3) the right provided by statute to the use of the mansion house for one year or the value of such use in money.

With that part of the judgment or decree holding that the surviving spouse was, by the "prenuptial agreement," barred from a distributive share in the Estate of Philip Troha, we are in complete accord and that part of such decree is affirmed. The appellee's cross appeal, claiming it was error to construe the "prenuptial agreement" as a bar to the widow's right to take under the statutes of descent and distribution, is, therefore, dismissed. Also, that part of the decree of the court, holding that Pauline Troha could claim no part of the joint and survivorship account in The National City Bank in the names of Philip Troha, Sr., and Philip Troha, Jr., is likewise affirmed.

We find, however, that that part of the decree sustaining the claim of the surviving spouse to the alleged statutory exemptions, that is, to the non-probate assets of the estate under §2115.13 R. C., and to a year's allowance, both as set out in the inventory and appraisement and approved by the court, and the holding that the surviving spouse is entitled to the right to occupy the mansion house for one year or its equivalent value in money, such interests not being controlled or released by the terms of the "prenuptial agreement," is contrary to the true meaning of such agreement and must be reversed and final judgment entered thereon for the appellant.

The agreement, as above quoted, in part, wherein it is provided: "and in lieu of any and all rights or claims in or to the estate of the said First Party (Philip Troha) which may arise or accrue by virtue of said marriage" is as complete a waiver of all of the statutory benefits of the appellee in the estate of her husband. Three separate phrases are used in the agreement to define what the "Second Party" was giving up for the benefits to her in releasing her property from any claims of the first party as a result of the contemplated marriage. They were "all rights or claims of dower, * * *;" "all right, title, interest, or claims to a distributive share of First Party's personal property, * * *;" and. "all rights of claims in or to the estate of said First Party which may arise or accrue by virtue of said marriage." As just indicated, the last phrase is all inclusive and was intended to release every right accruing to or conferred upon appellee by law in and to the property of Philip Troha upon his death after the marriage was consummated.

The claim that the appellee cannot contract away her statutory rights in the property of her husband's estate is not supported by the authorities. In the case of Cohen v. Cohen, 82 Oh Ap 260, 80 N. E. 2d 813, this question was directly considered and the rule clearly stated. The court held:

"An antenuptial agreement found to be fair, reasonable and by the decedent fully performed for some sixteen years is sufficient to preclude the widow from receiving the exemptions provided by §10509-54 GC, and is a complete bar to setting them off to her."

and on page 262, the court said:

"Historically, the purpose of the statute was to partially compensate the surviving spouse for loss of vested dower rights which were abolished at the same time and to supplement the compensatory increase granted a spouse under the statutes of descent and distribution, changed at the same time. See comment under §10509-54 GC, and Vol. IV, Ohio BAR, page 412.

"It, therefore, appears that the wording of the antenuptial agreement is peculiarly apt in specifically covering dower rights and claims to a distributive share of the estate.

"Further, the antenuptial agreement clearly declares its provisions to be in lieu of any and all rights or claims to a distributive share of the personal estate now owned or hereafter acquired, and in lieu of any and all claims or rights in and to the estate which may arise or accrue by virtue of the marriage.

"The language is all-inclusive, and leaves no room for construction by a court and clearly covers the provisions of that section."

We also hold that the fact that the court approved the statutory allowances set off by the appraisers without objection does not preclude the court from thereafter considering the question of whether or not the widow's right to such allowances is barred by a "prenuptial agreement."

For the foregoing reasons, and as herein set out, the judgment of the Probate Court, removing Angela Sneller as administratrix of the Estate of Philip Troha, deceased, is reversed and the cause remanded with instructions to overrule the motion seeking her removal. It is further ordered that the decree declaring the rights of the appellee, Pauline Troha as the surviving spouse, to certain assets of the Estate of Philip Troha, under the provisions of the "prenuptial agreement" of the parties is affirmed in part and reversed in part, the reversal being for the reason that that part of the decree reversed is contrary to law, and final judgment entered thereon for the appellant.

HURD and KOVACHY, JJ, concur.